UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WETTSTEIN AND SONS, INC., d\b\a WETTSTEIN'S, on behalf of itself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>CHUNGHWA PICTURE TUBES, LTD.; TATUNG COMPANY OF AMERICA, INC.; L.G. ELECTRONICS, INC.; LG PHILIPS DISPLAY USA, INC.; MATSUSHITA ELECTRIC INDUSTRIAL CO. LTD.; PANASONIC CORPORATION OF NORTH AMERICA; KONINKLIJKE PHILIPS ELECTRONICS N.V.; PHILIPS ELECTRONICS NORTH AMERICA CORPORATION; SAMSUNG ELECTRONICS CO.; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG SDI CO. LTD. f/k/a SAMSUNG DISPLAY DEVICE CO.; TOSHIBA CORPORATION; TOSHIBA AMERICA ELECTRONICS COMPONENTS, INC.; TOSHIBA AMERICA INFORMATION SYSTEMS, INC.; MT PICTURE DISPLAY COMPANY; MT PICTURE DISPLAY CORPORATION OF AMERICA (New York); MT PICTURE DISPLAY CORPORATION OF AMERICA (Ohio) and LP DISPLAYS,<br><br>     Defendants. | Case No. 07CV4889<br>MJD/AJB<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Wettstein and Sons, Inc., d\b\a Wettstein's, ("Plaintiff") individually and on

behalf of the Class described below, brings this action for treble damages and injunctive relief

against Defendants, demands a trial by jury, and alleges on information and belief to all matters

except those stated in paragraph 9, which are based on personal knowledge, as follows:

SCANNED
DEC 18 2007
U.S. DISTRICT COURT MPLS

63224.1

## NATURE OF THE CASE

1.      Plaintiff brings this lawsuit as a class action on behalf of individuals and entities who purchased cathode-ray tubes ("CRTs") and products containing CRTs (jointly, "CRT Products") in the United States directly from Defendants during the period from at least January 1, 1999 through the present (the "Class Period"). CRTs are used in a number of products including, but not limited to, computer monitors and televisions. As used herein, "CRT Products" refers to CRTs and products containing CRTs manufactured by any of the named Defendants, their subsidiaries or affiliates.

2.      During the Class Period, Defendants' collusive behavior artificially inflated the price of CRT Products. In particular, Defendants participated in cartel behavior and colluded to fix the prices of CRT Products.

3.      Throughout the Class Period, Defendants' conspiracy was intended to, and did, moderate the downward price pressures on CRT Products caused by the market entry and rapid penetration of more technologically advanced competitive products. As explained in further detail below, liquid crystal displays ("LCD") and plasma display panels ("PDP") were used in the same primary applications as CRTs and presented significant advantages over CRT Products. LCD, PDP and products containing LCD or PDP will collectively be referred to as flat panel display products ("FPD Products"). Many of the Defendants, in addition to manufacturing, distributing and selling CRT Products, were also manufacturers, distributors, and sellers of FPD Products. Defendants who participated in both the market for CRT Products and the market for FPD Products will be specifically identified below.

4.      Because of Defendants' unlawful conduct and conspiracy, Plaintiff and other members of the Class paid artificially inflated prices for CRT Products. Plaintiff and other members of the Class who purchased these products have, therefore, been damaged by Defendants' illegal actions.

## JURISDICTION AND VENUE

5.    Plaintiff brings this action pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, for treble damages as well as reasonable attorneys' fees and costs of suit for Defendants' violation of section 1 of the Sherman Act, 15 U.S.C. § 1.

6.    Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337, and by section 4 of the Clayton Act, 15 U.S.C. § 15(a).

7.    This Court has *in personam* jurisdiction over each of the Defendants because each was engaged in an illegal price-fixing scheme and conspiracy that was directed to and/or caused injury to persons or entities residing in, located in, or doing business in this District and throughout the United States.

8.    Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a) and 22, 28 U.S.C. § 1391(b), (c), and (d) during the Class Period, one or more of the Defendants resided, transacted business, was found, or had agents in this district, and because a substantial part of the events giving rise to Plaintiff's claims occurred and a substantial portion of the affected interstate trade and commerce described below was carried out in this District.

## THE PARTIES

### A.    **Plaintiff**

9.    Plaintiff Wettstein and Sons, Inc., d\b\a Wettstein's, is a corporation organized and existing under the laws of the State of Wisconsin and has its principal place of business at 215 North Third Street, La Crosse, Wisconsin 54601.  Wettstein's purchased CRTs and products containing CRTs directly from one or more of the Defendants during the Class Period and was injured as a result of Defendants' illegal conduct.

### B.    **Defendants**

#### 1.    **Chunghwa**

10.    Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a Taiwanese company with its principal place of business at 1127 Heping Road, Bade City, Taoyuan, Taiwan.  It is a partially owned subsidiary of Tatung Company, a consolidated consumer electronics and

information technology company based in Taiwan. Chunghwa's Board of Directors includes representatives from Tatung Company. The Chairman of Chunghwa, Weishan Lin, is also the Chairman and General Manager of Tatung Company. During the Class Period, Chunghwa manufactured, sold, and distributed CRT Products to customers throughout the United States. Chunghwa also manufactured, distributed and sold FPD Products in the United States during the Class Period.

11.    Defendant Tatung Company of America, Inc. is a California corporation with its principal place of business at 2850 El Presidio Street, Long Beach, California. Tatung Company of America, Inc. is a wholly-owned and controlled subsidiary of Tatung Company. During the Class Period, Tatung Company of America, Inc. manufactured, sold, and distributed CRT Products to customers throughout the United States. Tatung Company of America, Inc. also manufactured, distributed and sold FPD Products in the United States during the Class Period.

2.    **LG**

12.    Defendant LG Electronics, Inc. ("LGE"), is a manufacturer of CRT Products with its global headquarters located at LG Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul, Korea 150-721. During the Class Period, LGE manufactured, sold and distributed CRT Products to customers throughout the United States. LGE also manufactured, distributed and sold FPD Products in the United States during the Class Period.

3.    **Matsushita**

13.    Defendant Matsushita Electric Industrial Co., Ltd ("Matsushita") is a Japanese company and has its global headquarters at 1006 Kadoma, Osaka 571-8501, Japan. Matsushita is the parent company of Panasonic Corporation of North America, JVC Company of America, and Victor Company of Japan, Ltd. During the Class Period, Matsushita manufactured, sold and distributed CRT Products to customers throughout the United States. Matsushita also manufactured, distributed and sold FPD Products in the United States during the Class Period.

14.    Defendant Panasonic Corporation of North America ("Panasonic"), is a subsidiary of Defendant Matsushita and oversees its North American business operations, including sales.

Defendant Panasonic has its global headquarters at 1 Panasonic Way, Secaucus, New Jersey, 07094. During the Class Period, Panasonic manufactured, sold and distributed CRT products to customers throughout the United States. A substantial portion of the CRTs produced by MT Picture Displays Co., Matsushita's subsidiary, went to Panasonic for Panasonic's production of CRT Products. Panasonic also manufactured, distributed and sold FPD Products in the United States during the Class Period.

        4.   **Philips**

15.     Defendant Koninklijke Philips Electronics N.V. ("Koninklijke") has its global headquarters at Breitner Center Amstelplein 2, Amsterdam 1096 BC, Netherlands. During the Class Period, Koninklijke manufactured, sold and distributed CRT Products to customers throughout the United States. Koninklijke also manufactured, distributed and sold FPD Products in the United States during the Class Period.

16.     Defendant Philips Electronics North America Corporation ("Philips Electronics NA"), is a manufacturer of CRT Products. Defendant Philips Electronics NA has its global headquarters at 1251 Avenue of the Americas, New York, New York 10020. During the Class Period, Philips Electronics NA manufactured, sold and distributed CRT Products to customers throughout the United States. Philips Electronics NA also manufactured, distributed and sold FPD Products in the United States during the Class Period.

17.     Defendant LG Philips Display USA, Inc. ("LGPD"), is a manufacturer of CRT Products and is a subsidiary of Philips Electronics NA. Defendant LG Philips Display USA, Inc. has its global headquarters at 300 W Morgan Rd, Ann Arbor, MI 48108-9108, United States. During the Class Period, LGPD manufactured, sold and distributed CRT Products to customers throughout the United States.

        5.   **Samsung**

18.     Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics") is a Korean company with its principal place of business at Samsung Main Building, 250, Taepyeongno 2-ga, Jung-gu, Seoul 100-742, Korea. It is the world's largest producer of CRT Products. During the

Class Period, Samsung Electronics manufactured, sold, and distributed CRT Products to customers throughout the United States. Samsung Electronics also manufactured, distributed and sold FPD Products in the United States during the Class Period.

19.    Defendant Samsung SDI Co., Ltd. ("Samsung SDI"), formerly known as Samsung Display Device Co., has its global headquarters at Samsung Life Insurance Bldg 150, Seoul 100-716, Korea. During the Class Period, Samsung SDI manufactured, sold and distributed CRT Products to customers throughout the United States. Samsung SDI also manufactured, distributed and sold FPD Products in the United States during the Class Period.

20.    Defendant Samsung Electronics America, Inc. ("Samsung America") is a New York corporation with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey. Samsung America is a wholly-owned and controlled subsidiary of Defendant Samsung Electronics Company, Ltd. During the class Period, Samsung America sold and distributed CRT Products manufactured by Samsung Electronics Company, Ltd. to customers throughout the United States. Samsung America also sold and distributed FPD Products in the United States during the Class Period.

21.    Defendants Samsung Electronics Company, Ltd., Samsung SDI Co., Ltd., and Samsung America are referred to collectively herein as "Samsung."

6.    **Toshiba**

22.    Defendant Toshiba Corporation is a Japanese company with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. During the Class Period, Toshiba Corporation manufactured, sold, and distributed CRT Products to customers throughout the United States. Toshiba Corporation also manufactured, distributed and sold FPD Products in the United States during the Class Period.

23.    Defendant Toshiba America Electronics Components, Inc. is a California corporation with its principal place of business at 19900 MacArthur Boulevard, Suite 400, Irvine, California. Toshiba America Electronics Components, Inc. is a wholly-owned and controlled subsidiary of Toshiba America, Inc., a holding company for Defendant Toshiba Corporation.

During the Class Period, Toshiba America Electronics Components, Inc. sold and distributed CRT Products manufactured by Toshiba Corporation to customers throughout the United States. Toshiba America Electronic Components also sold and distributed FPD Products manufactured by Toshiba Corporation in the United States during the Class Period.

24.     Defendant Toshiba America Information Systems, Inc. is a California corporation with its principal place of business at 9470 Irvine Blvd., Irvine, California.  Toshiba America Information Systems, Inc. is a wholly-owned and controlled subsidiary of Toshiba America, Inc., a holding company for Defendant Toshiba Corporation.  During the Class Period, Toshiba America Information Systems, Inc. sold and distributed CRT Products manufactured by Toshiba Corporation to customers throughout the United States.  Toshiba America Information Systems also sold and distributed FPD Products manufactured by Toshiba Corporation in the United States during the Class Period.

25.     Defendants Toshiba Corporation, Toshiba America Electronics Components, Inc., and Toshiba America Information Systems, Inc. are referred to collectively herein as "Toshiba."

7.     **Joint Ventures**

26.     Defendant MT Picture Display Company is a wholly-owned and controlled subsidiary of Defendant Matsushita organized under the laws of Japan with its principal place of business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan. Prior to April 2007, MT Picture Display Company was a joint venture between Matsushita Electric Industrial Co., Ltd. and Toshiba Corporation named Matsushita Toshiba Picture Display Co. Ltd. This joint venture was created in 2003 and integrated the CRTs operations of its parents.  During the Class Period, both MT Picture Display and its predecessor Matsushita Toshiba Picture Display Co. Ltd. sold and distributed CRT Products to customers throughout the United States.

27.     Defendants MT Picture Display Corporation of America (New York) and MT Picture Display Corporation of America (Ohio) were subsidiaries of MT Picture Display Company.  Both subsidiaries were incorporated in Maryland and with their principal place of

business located at 300 East Lombard Street, Baltimore, MD 21202.  During the Class Period,
MT Picture Display Corporation of America (New York) and MT Picture Display Corporation of
America (Ohio) sold and distributed CRT Products to customers throughout the United States.

28.    Defendant LP Displays (formerly known as LG Philips Display), a joint venture
between LG Electronics and Koninklijke Philips Electronics, is organized under the laws of
Hong Kong with its principal place of business located at Corporate Communications, 6th Floor,
ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong.  During the Class Period,
LP Displays sold and distributed CRT Products to customers throughout the United States.

29.    Each defendant committed the acts alleged in this complaint through its officers,
directors, agents, employees, or representatives while they were actively engaged in the
management, direction, control, or transaction of the Defendant's business or affairs.

30.    Defendants' unlawful and intentional concerted actions have severely damaged
and will continue to damage Plaintiff and the members of the Class it seeks to represent.

### CO-CONSPIRATORS AND AGENCY

31.    Defendants, along with certain other persons, firms, corporations and entities, are
co-conspirators in the violations and conspiracies alleged in this Complaint.  These co-
conspirators have performed acts and made statements in furtherance of the antitrust violations
and conspiracies alleged herein.

32.    At all relevant times, each Defendant ratified and/or authorized the wrongful acts
of each of the other Defendants.  Defendants individually and collectively are sued as
participants and as aiders and abettors in the improper acts, plans, schemes and transactions that
are the subject of this Complaint.  Defendants individually and collectively participated as
numbers of the conspiracy or acted with or in furtherance of it, or aided or assisted in carrying
out its purposes alleged in this Complaint, and have performed acts and made statements in
furtherance of the violations and conspiracy.

33.    At all times, each Defendant was the agent of the other Defendants and in
committing the violations and conspiracies alleged in this Complaint was acting within the

course and scope of that agency and with the permission and consent of the principals.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action both on behalf of itself and on behalf of the following

Class pursuant Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure:

> All persons and entities residing in the United States who, from January 1, 1999
> through the present, purchased CRT Products in the United States directly from
> the Defendants. Specifically excluded from this Class are the Defendants; the
> officers, directors or employees of any Defendant; any entity in which any
> Defendant has a controlling interest; and any affiliate, legal representative, heir or
> assign of any Defendant. Also excluded are all governmental entities, and any
> judicial officer presiding over this action.

35.     This action has been brought and may be properly maintained as a class action

pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a.     The Class is ascertainable and there is a well-defined community of

interest among the members of the Class;

b.     Based upon the nature of the trade and commerce involved and the

number of direct purchasers of CRT Products, Plaintiff believes that the members of the Class

number in the thousands and, therefore, the Class members are sufficiently numerous that joinder

of all Class members is not practicable;

c.     Plaintiff's claims are typical of the claims of the members of the Class

because Plaintiff directly purchased CRT Products from one or more of the Defendants or their

co-conspirators and, therefore, Plaintiff's claims arise from the same common course of conduct

giving rise to the claims of the members of the Class and the relief sought is common to the

Class;

d.     The following common questions of law or fact, among others, exist as to

the members of the Class:

i.     whether Defendants formed and operated a combination or

conspiracy to fix, raise, maintain or stabilize the prices of, or allocate the market for, CRT

Products;

ii.     whether Defendants' conduct caused CRT Products prices to be

higher than they would have been in the absence of Defendants' conduct;

                iii.     the duration of Defendants' combination or conspiracy;

                iv.     whether Defendants fraudulently concealed the conspiracy;

                v.     whether Defendants' conduct caused injury to the business or property of Plaintiff and the members of the Class; and

                vi.     the appropriate measure of the amount of damages suffered by the Class;

        e.     These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

        f.     Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff has no interests that are antagonistic to other members of the Class and has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent Plaintiff and the Class.

36.     Defendants have acted on grounds that are generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

37.     This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy. Prosecution as a class action will avoid repetitious litigation. There will be no material difficulty in the management of this action as a class action.

38.     The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## TRADE AND COMMERCE

39.     During the Class Period, each Defendant, or one or more of its subsidiaries, sold CRT Products in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

40.     The business activities of the Defendants substantially affected interstate trade

and commerce in the United States and caused antitrust injury in the United States.

## FACTUAL ALLEGATIONS

### A.    CRT Technology

41.    CRT technology has been in use for more than 100 years.  The basic cathode-ray tube consists of three elements: the envelope, the electron gun, and the phosphor screen.



**Cross-sectional representation of a cathode ray tube**

Source: DIYcalculator.com, available at www.diycalculator.com/sp-console.shtml.

42.    CRTs are manufactured in several standard sizes, including 17 inch, 19 inch, 27 inch and 32 inch.  CRTs manufactured by Defendants are interchangeable with one another.

### B.    Trends within the CRT Products Market and Increased Competition from FPD Products

43.    The worldwide market for CRT Products is and has been large.  In 1997, the worldwide CRTs market exceeded $24 billion in sales.

44.    At the beginning of the Class Period, CRTs were the dominant display technology

63224.1                                          11

worldwide.  For example, in 1997, 99.3% of all computer monitors sold worldwide contained CRTs.  In 2005, approximately 47 million CRT monitors were sold worldwide, and approximately 20.3% of these were sold in the United States.

45.  Although the value of all display materials shipped worldwide is projected to rise at an average annual growth rate of 12.8% by 2010, worldwide demand for CRT Products is declining overall because of the growing popularity of FPD Products which are being used in place of CRT Products. (<http://www.bccresearch.com/RepTemplate.cfm?reportID=552&RepDet=HLT&cat=smc&target=repdet...11/13/2007>).  CRT Products' share of the market declined precipitously in the United States where FPD Products achieved more rapid market penetration.

46.  FPD Products may be used to produce the same image as CRT Products but also have many important advantages over CRT Products.  For example, FPD Products are less bulky, require less energy, are easier to read, and do not flicker.

47.  In 1995, recognizing the increasing significance of FPD technologies, Korean manufacturers Samsung and LG Electronics entered the FPD Product market, leading to a surge in FPD Product manufacturing capacity.

48.  The market share of CRT Products declined as other newer technologies emerged and were brought to market.  As demonstrated in the chart below, by 1998, FPD Products had already achieved 32% of the U.S. market for CRT Products.  Penetration by FPD Products is projected to reach 96% by 2009.  FPD Products' global penetration has not been as dramatic as it was in the United States due to the continued popularity of lower-priced CRT Products in China, India and South America.



Source: David Hsieh, *Flat Panel Display Market Outlook*, DisplaySearch Presentation, Nov. 5, 2005.

49.     CRT TVs currently account for only a minority share of television set revenues in North America (37.3%), Japan (9.5%) and Europe (31.0%).  Naranjo, *The Global Television Market*, DisplaySearch Report, p. 19.

50.     During the Class Period, while demand for CRT Products continued to fall in the United States, Defendants' conspiracy was effective in moderating the normal downward pressures on prices for CRT Products caused by the entry of the new generation of competing technologies.  Indeed, during the Class Period, there were not only periods of unnatural and sustained price stability, but there were also inexplicable increases in the prices of CRTs, despite declining demand due to approaching obsolescence of CRTs caused by the emergence of a new, superior, substitutable technology.

51.     These periods of price stability and price increases for CRTs are fundamentally

inconsistent with a competitive market for a product where demand is rapidly decreasing because of the introduction of new superior technologies.

### C. Structure of the CRT Product Industry

52.    The CRT Product industry is characterized by a number of structural features that facilitate collusion, including market concentration, the consolidation of manufacturers, multiple interrelated business relationships, significant barriers to entry, and interchangeability of products.

53.    Defendant Samsung SDI has the largest market share of any CRT Products manufacturer at this point in time. In 2000, Defendant Samsung SDI had 18% of the global CRTs market. In 2002, Samsung SDI had 21.8% of the global market for CRT monitors. In 2004, Samsung SDI had a 30% share of the global CRTs market.

54.    Defendant LP Displays (formerly LG Philips Displays) has the second largest share of the CRT market. In 2004, LG Philips Displays held 27% of the global market for CRT.

55.    Defendant MT Picture Display (formerly Matsushita Toshiba Display Co.) is also a major player in the CRTs market. In 2004, Matsushita Toshiba Picture Display Co. held 9% of the global market for CRTs.

56.    Defendant Chunghwa Picture Tubes held 21.7% of the global CRT market in 1999.

57.    In 2004, Defendants Samsung SDI, LP Displays, MT Picture Display, and Chunghwa Picture Tubes maintained a collective 78% of the global CRT market.

58.    The market for CRT Products is subject to high manufacturing and technological barriers to entry. Efficient fabrication plants are large and costly and require years of research, development and construction. Technological advances have caused Defendants to undertake significant research and development expenses.

59.    The CRT Products market has also been subject to substantial consolidation and multiple interrelated business relationships during the Class Period. Matsushita Electric Industrial Co. Ltd. and Toshiba Corporation combined their efforts by forming Defendant MT

Picture Display Company. At the time of the formation of MT Picture Display, Matsushita and Toshiba had been the fourth and sixth largest CRT manufacturers in the world. This joint venture combined the entire CRT operations of both parent companies. MT Picture Display Company specialized in the manufacture of CRTs above 30 inches, supplying some 950,000 units annually to the North American market.

60.    In November 2000, Defendants LG Electronics and Koninklijke Philips Electronics agreed to enter a 50/50 joint venture that merged their CRT operations. The resulting joint venture, originally named LG Philips Displays, and renamed LP Displays in 2007, entered the market with a 25% share, making it the second largest CRT manufacturer only behind Samsung SDI at the time.

61.    In 2005, Samsung SDI and LG Philips Displays entered into an agreement to share parts with respect to CRTs in an effort to boost their combined market share.

62.    Defendants sell their CRT Products through various channels, including to manufacturers of electronic products and devices, and to resellers of CRT Products, and incorporate CRTs into their own manufactured products, which are then sold directly to consumers.

### D.    **International Antitrust Investigations**

63.    Competition authorities in the United States, Europe, Japan and South Korea recently engaged in coordinated actions, including raids, targeting the unlawful CRT Products cartel alleged in this Complaint. On November 9, 2007, the Reuters news agency reported:

> Antitrust authorities in Europe and Asia raided a Matsushita Electric Industrial Co. Ltd. unit and other cathode ray tube markers on suspicion of price fixing, weighing on the shares of the Panasonic maker.

> *        *        *

> Matsushita confirmed Japan's Fair Trade Commission (FTC) had begun a probe of its cathode ray tube unit. MT Picture Display Co. Ltd., while Samsung SDI Co. Ltd. said South Korea's FTC had started an investigation into its CRT business.

(www.reuters.com/article/mergersNews/idUSL0890850720071109).

64.    On November 9, 2007, the European Commission confirmed in Brussels that "on November 8 Commission officials carried out unannounced inspections at the premises of manufacturers of cathode ray tubes." The European Commission's announcement continued stating: "The Commission has reason to believe that the companies concerned may have violated EC Treaty rules on cartels and restrictive business practices."

65.    On November 12, 2007, Chunghwa Picture Tubes, Ltd. confirmed that it had received a subpoena from a California district court relating to CRTs. A federal grand jury operating under the auspices of the United States Department of Justice, Antitrust Division ("DOJ") through its San Francisco office issued the subpoena.

66.    On November 21, 2007, Koninklijke Philips Electronics, N.V. reported that it and its joint venture with LG Electronics, LP Displays, are also targets of the coordinated investigation into collusive practices and other antitrust violations in the CRTs market.

67.    The Defendants include known recidivist antitrust violators. Samsung, for example, was fined $300 million by the DOJ in October 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory. It is also under investigation by the DOJ (along with some of the other Defendants, including Toshiba) for fixing prices of Static Random Access Memory. Samsung and Toshiba are also being investigated for collusion among manufacturers of NAND flash memory.

68.    Several Defendants, including Samsung and a joint venture between LG Electronics and Koninklijke Philips Electronics, are targets of a coordinated investigation by the DOJ and antitrust authorities in Europe, Japan and South Korea in connection with anticompetitive conduct in the market for LCD Products. Because LCD Products and CRT Products are used in the same primary applications, collusion with respect to CRT Product prices would bolster these same Defendants' LCD pricing cartel. Keeping CRT prices artificially inflated would both increase profits on remaining CRT sales while protecting LCD prices.

## FRAUDULENT CONCEALMENT

69.     Plaintiff and members of the Class did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein any earlier than November 9, 2007 when it was first publicly reported that manufacturers of CRT Products were under investigation by antitrust authorities in Europe, Japan, and South Korea for conspiring to fix the prices of CRT Products.

70.     Because Defendants' agreements, understandings, and conspiracies were kept secret until November 9, 2007, Plaintiff and members of the Class before that time were unaware of Defendants' unlawful conduct alleged herein, and they did not know before that time they were paying artificially high prices for CRT Products throughout the United States during the Class Period.

71.     The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

72.     By its very nature, Defendants' price fixing conspiracy was inherently self-concealing.  The CRT industry is not exempt from antitrust regulation, and thus, before November 9, 2007, Plaintiff reasonably considered it to be a well-regulated competitive industry.

73.     In the context of the circumstances surrounding Defendants' pricing practices, Defendants' acts of concealment were more than sufficient to preclude suspicion by a reasonable person that Defendants' pricing was collusive and conspiratorial.  Accordingly, a reasonable person under the circumstances would not have been alerted to investigate the legitimacy of Defendants' prices before November 9, 2007.

74.     Plaintiff and members of the Class could not have discovered the alleged contract, conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

75. Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Class had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until November 9, 2007, when reports of the investigations into price fixing in the CRT industry were first publicly disseminated.

76. None of the facts or information available to Plaintiff and members of the Class prior to November 9, 2007, if investigated with reasonable diligence, could or would have led to the discovery of the conspiracy alleged herein prior to November 9, 2007.

77. As a result of the self-concealing nature of the conspiracy and the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLAIM FOR RELIEF
### (Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1)

78. Plaintiff, on behalf of itself and all others similarly situated, realleges and incorporates, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows.

79. Beginning at least as early as January 1, 1999 and continuing through the present, the exact dates being unknown to Plaintiff, Defendants and various co-conspirators entered into and engaged in a continuing agreement, contract, combination, and conspiracy to fix, raise, maintain, or stabilize the price for CRT Products in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

80. Defendants, through their officers, directors and employees, entered into the contract, combination, trust and conspiracy among themselves and their co-conspirators by, among other things:

    a. participating in communications, including discussions of the prices of CRT Products in the United States;

b.    agreeing, during those communications, to charge prices at specified levels and otherwise to increase, stabilize and maintain prices of CRT Products sold in the United States; and

c.    selling CRT Products to various customers in the United States at artificially inflated prices.

81.    For the purpose of forming and implementing the alleged combinations, agreements, understandings and concert of action, Defendants and their co-conspirators did those things they conspired to do, including but not limited to the acts alleged above, including actions to fix, raise, maintain and stabilize the price of CRT Products.

82.    Defendants have participated in one or more overt acts in furtherance of the conspiracy alleged above, and have participated in the conspiratorial activities described above.

83.    The combination and conspiracy alleged herein has had the following effects, among others:

a.    Price competition in the sale of CRT Products has been restrained, suppressed and/or eliminated throughout the United States;

b.    Prices for CRT Products sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, noncompetitive levels throughout the United States; and

c.    Plaintiff and members of the Class have been deprived of the benefits of free and open competition.

84.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and the members of the Class have been injured in their business and property in that they paid more for CRT Products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

A.    That the Court determine that the claim alleged herein under the Sherman Act, 15

U.S.C. § 1 may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

      B.     That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

      C.     That Plaintiff and the Class recover damages, as provided law, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with applicable laws;

      D.     That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and their respective officers, directors, partners, principals, agents and employees thereof, be enjoined and restrained from continuing and maintaining the combination, conspiracy or agreement alleged herein;

      E.     That Plaintiff and members of the Class be awarded pre- and post-judgment interest, and that the interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

      F.     That Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

      G.     That Plaintiff and members of the Class receive an award for such other and further relief as the nature of the case may require or as the Court deems just, equitable, and proper.

## JURY TRIAL DEMANDED

      Plaintiff hereby respectfully demands a trial by jury for all issues so triable.

Dated: December 18, 2007

Samuel D. Heins (#43576)
Vincent J. Esades (#249361)
Troy J. Hutchinson (#0320420)
Katherine T. Kelly (#0337535)
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue

Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
heins@heinsmills.com
vesades@heinsmills.com
thutchinson@heinsmills.com
kkelly@heinsmills.com

Michael Stoker
**JOHNS FLAHERTY & COLLINS, S.C.**
Exchange Building, Suite 600
205 Fifth Avenue South
P.O. Box 1626
LaCrosse, WI 54602-1626
michael@johnsflaherty.com

Steven J. Greenfogel
**MEREDITH COHEN GREENFOGEL
& SKIRNICK, P.C.**
1521 Locust St., 8th Floor
Philadelphia, PA 19102
Telephone No: (215)564-5182
sgreenfogel@mcgslaw.com

*Attorneys for Plaintiff and the Proposed Class*

ATYADM, CLOSED, CV

# U.S. District Court
## U.S.District Court Minnesota (DMN)
## CIVIL DOCKET FOR CASE #: 0:07-cv-04889-MJD-AJB

Wettstein and Sons, Inc. v. Chunghwa Picture Tubes, Ltd. et al      Date Filed: 12/18/2007
<span style="color:red">DO NOT DOCKET. CASE HAS BEEN TRANSFERRED OUT.</span>    Jury Demand: Plaintiff
Assigned to: Judge Michael J. Davis      Nature of Suit: 410 Anti-Trust
Referred to: Magistrate Judge Arthur J. Boylan      Jurisdiction: Federal Question
rel Case: 0:08-cv-00160-MJD-AJB
Cause: 15:15 Antitrust Litigation

### Plaintiff

**Wettstein and Sons, Inc.**      represented by    **Katherine T Kelly**
*on behlaf of itself and all others similarly*      Heins Mills & Olson, PLC
*situated*      310 Clifton Ave
*doing business as*      Mpls, MN 55403
Wettstein's      612-436-5367
     Fax: 612-338-4692
     Email: kkelly@heinsmills.com
     *LEAD ATTORNEY*
     *ATTORNEY TO BE NOTICED*

     **Michael-NA Stoker**
     Not Admitted
     *LEAD ATTORNEY*
     *ATTORNEY TO BE NOTICED*

     **Samuel D Heins**
     Heins Mills & Olson, PLC
     310 Clifton Ave
     Mpls, MN 55403
     612-338-4605
     Fax: 612-338-4692
     Email: sheins@heinsmills.com
     *LEAD ATTORNEY*
     *ATTORNEY TO BE NOTICED*

     **Steven-NA J Greenfogel**
     Not Admitted
     *LEAD ATTORNEY*
     *ATTORNEY TO BE NOTICED*

     **Troy J Hutchinson**
     Heins Mills & Olson, PLC

310 Clifton Ave
Mpls, MN 55403
612-338-4605
Fax: 612-338-4692
Email: thutchinson@heinsmills.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vincent J Esades**
Heins Mills & Olson, PLC
310 Clifton Ave
Mpls, MN 55403
612-338-4605
Fax: 612-338-4692
Email: vesades@heinsmills.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Chunghwa Picture Tubes, Ltd.**

**Defendant**

**Tatung Company of America, Inc**

**Defendant**

**L.G. Electronics, Inc.**

**Defendant**

**LG Philips Display USA, Inc.**

**Defendant**

**Matsushita Electric Industrial Co. Ltd**

**Defendant**

**Panasonic Corporation of North America**

**Defendant**

**Koninkluke Philips Electronics N.V.**

**Defendant**

**Philips Electronics North America Corporation**

**Defendant**

**Samsung Electronics Co.**

**Defendant**

**Samsung Electronics America, Inc.**

**Defendant**

**Samsung SDI Co. Ltd.**
*formerly known as*
Samsung Display Device Co.

**Defendant**

**Toshiba Corporation**

**Defendant**

**Toshiba America Electronic Components, Inc.**

**Defendant**

**Toshiba America Information Systems, Inc.**

**Defendant**

**MT Picture Display Company**

**Defendant**

**MT Picture Display Corporation of America (New York)**

**Defendant**

**MT Picture Display Corporation of America (Ohio)**

**Defendant**

**LP Displays**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/18/2007 | 🔵1 | COMPLAINT against Tatung Company of America, Inc, L.G. Electronics, Inc., LG Philips Display USA, Inc., Matsushita Electric Industrial Co. Ltd, Panasonic Corporation of North America, Koninkluke Philips Electronics N.V., Philips Electronics North America Corporation, Samsung Electronics Co., Samsung Electronics America, Inc., Samsung SDI Co. Ltd., Toshiba Corporation, Toshiba America Electronic Components, Inc., Toshiba America Information Systems, Inc., MT Picture Display Company, MT Picture Display Corporation of America (New York), MT Picture Display Corporation of America (Ohio), LP Displays, Chunghwa Picture Tubes, Ltd. (Filing fee $ 350 receipt number 40018398) assigned to Judge Michael J. Davis per Antitrust List referred to Magistrate Judge Arthur J. Boylan filed by Wettstein and Sons, Inc. (Attachments: # 1 Civil Cover Sheet) (SEA) QC'd by KT on 12/19/07. (Entered: 12/19/2007) |

| | | |
|---|---|---|
| 12/18/2007 | ● | Summons Issued as to Tatung Company of America, Inc, L.G. Electronics, Inc., LG Philips Display USA, Inc., Matsushita Electric Industrial Co. Ltd, Panasonic Corporation of North America, Koninkluke Philips Electronics N.V., Philips Electronics North America Corporation, Samsung Electronics Co., Samsung Electronics America, Inc., Samsung SDI Co. Ltd., Toshiba Corporation, Toshiba America Electronic Components, Inc., Toshiba America Information Systems, Inc., MT Picture Display Company, MT Picture Display Corporation of America (New York), MT Picture Display Corporation of America (Ohio), LP Displays, Chunghwa Picture Tubes, Ltd.. (SEA) (Entered: 12/19/2007) |
| 01/14/2008 | ●2 | Response by Wettstein & Sons, Inc.'s Interested Party to Motions for Transfer and Consolidation Pending before the JPML. (Attachments: # 1 Schedule of Actions # 2 Certificate of Service)(Hutchinson, Troy) Modified text on 1/14/2008 (dch). (Entered: 01/14/2008) |
| 01/21/2008 | ●3 | ORDER that 08cv160 PJS/RLE has been reassigned to Judge Michael J. Davis and Magistrate Judge Arthur J. Boylan. Signed by Judge Michael J. Davis on 1/18/08 and Judge Patrick J. Schiltz on 1/18/08. (SEA) (Entered: 01/21/2008) |
| 03/21/2008 | ●4 | CERTIFIED Copy of Transfer Order (CTO-1) from the Judicial Panel on Multi-District Litigation; transferring case to the Northern District of California for coordinated or consolidated pretrial proceedings. Case assigned to the Honorable Samuel Conti. (jz) (Entered: 03/21/2008) |
| 03/21/2008 | ● | NOTICE to Attorney: Case #07-4889 MJD/AJB has been transferred electronically to the Northern District of California pursuant to CTO-1.(jz) (Entered: 03/21/2008) |

07.4889 MJD

A CERTIFIED TRUE COPY

MAR 1 4 2008

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 2 7 2008

FILED
CLERK'S OFFICE

**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

**IN RE: CATHODE RAY TUBE (CRT)**
**ANTITRUST LITIGATION**

C 07-5944 SC

(SEE ATTACHED SCHEDULE)

MDL No. 1917

**FILED**

MAR 1 8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**CONDITIONAL TRANSFER ORDER (CTO-1)**

On February 15, 2008, the Panel transferred one civil action to the United States District Court for the Northern District of California for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* ___F.Supp.2d___ (J.P.M.L. 2008). With the consent of that court, all such actions have been assigned to the Honorable Samuel Conti.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the action previously transferred to the Northern District of California and assigned to Judge Conti.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Northern District of California for the reasons stated in the order of February 15, 2008, and, with the consent of that court, assigned to the Honorable Samuel Conti.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Northern District of California. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

Inasmuch as no objection is
pending at this time, the
stay is lifted.

MAR 1 4 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

I hereby certify that the annexed
instrument is a true and correct copy
of the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By
Deputy Clerk
Date 03/18/08

**S C A N N E D**

MAR 2 1 2008

U.S. DISTRICT COURT MPLS

IN RE: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION                                    MDL No. 1917

## SCHEDULE CTO-1 - TAG-ALONG ACTIONS

**DIST. DIV. C.A. #**              **CASE CAPTION**

ARKANSAS WESTERN
  ARW  5   08-5013         Jerry Cook v. Chunghwa Picture Tubes, Ltd., et al.

ARIZONA
  AZ  2   08-55            Brian A. Luscher, et al. v. Chunghwa Picture Tubes, Ltd., et al.

MINNESOTA
  MN  0   07-4889          Wettstein & Sons, Inc., etc. v. Chunghwa Picture Tubes, Ltd., et al.
  MN  0   08-160           Barry Kushner, et al. v. Chunghwa Picture Tubes, Ltd., et al.

NEW JERSEY
  NJ  2   07-5713          Princeton Display Technologies, Inc. v. Chunghwa Picture Tubes, Ltd., et al.
  NJ  2   08-39            Royal Data Services, Inc. v. Samsung Electronics Co., Ltd., et al.
  NJ  2   08-86            OK TV & Appliances, LLC v. Samsung Electronics Co., Ltd., et al.

NEW YORK SOUTHERN
  NYS  1   07-10664        Arch Electronics, Inc. v. LG Electronics, Inc., et al.
  NYS  1   07-10674        Meijer, Inc., et al. v. LG Electronics, Inc., et al.
  NYS  1   07-11203        Industrial Computing, Inc. v. Chunghwa Picture Tubes, Ltd., et al.

OHIO NORTHERN
  OHN  1   08-62           Southern Office Supply, Inc. v. Chunghwa Picture Tubes, Ltd., et al.

SOUTH CAROLINA
  SC  4   07-4175          Greg A. Glanz v. Chunghwa Picture Tubes, Ltd., et al.

TENNESSEE EASTERN
  TNE  2   08-11           Charles Benson v. Chunghwa Picture Tubes, Ltd., et al.

VERMONT
  VT  2   08-5             Margaret Slagle v. Chunghwa Picture Tubes, Ltd., et al.

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Richard W. Wieking
Clerk

450 Golden Gate Avenue
San Francisco, CA 94102
415.522.2000

U.S. District Court
202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

18 March 2008

Re:     MDL 1917 In re Cathode Ray Tube (CRT) Antitrust Litigation

Title of Case(s)                                                        Your Case Number(s)
*Wettstein & Sons, Inc. etc. -v- Chunghwa Picture Tubes, Ltd., et al*     C.A . No. 0:07-4889

Dear Clerk:

Enclosed is a certified copy of the order from the Judicial panel on Multidistrict Litigation transferring the above entitled action to the Northern District of California, San Francisco Division. The case has been assigned to the Honorable Samuel Conti for coordinated or consolidated pretrial processing pursuant to 28 USC §1407.

Please forward the original record and a certified copy of the docket entries in the case listed above along with the enclosed copy of this transmittal letter to:

United States District Court
Northern District of California
450 Golden Gate Avenue, P.O. Box 36060
San Francisco, CA 94102
Attn: MDL Clerk

If the case is an electronic case filing please do one of the following: 1) electronically transfer the case via ECF by contacting our Automation Department at ecfhelpdesk@cand.uscourts.gov; 2) e-mail the PDF documents, as separate PDF files,  including a PDF copy of the docket sheet to SFmdl_clerk@cand.uscourts.gov; 3) provide the PDF documents on a disc; or 4) provide us with a temporary log in and a password to directly access your database to expedite the downloading of the PDF files we need and/or require,  We appreciate your prompt attention to this matter.

Sincerely yours,
Richard W. Wieking, Clerk

*L. C. Santos*

For Simone Voltz
Deputy Clerk

Encl.